IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. RENEE LUCHTMAN, et al.,<br>Plaintiffs,<br>v.<br>HOMESTEAD HOSPICE, et al.,<br>Defendants. | CIVIL ACTION FILE<br>NO. 1:15-CV-00840-TWT |

**OPINION AND ORDER**

This is a qui tam action. It is before the Court on the Plaintiff-Relators' Motion for Statutory Award of Fees and Expenses [Doc. 91]. For the following reasons, the Motion is GRANTED.

## I. Background

The Plaintiff-Relators ("Plaintiffs") filed this action in 2015 alleging violations of the False Claims Act and the Georgia False Medicaid Claims Act.[1] After years of extensions, the United States and the State of Georgia elected to intervene in this action in June 2025 and then settled with the Defendants as to certain claims, resulting in a voluntary dismissal with prejudice of the remaining merits claims of the Plaintiffs pursuant to Fed. R. Civ. P. 41(a)(2). [Docs. 88, 89]. The Plaintiffs specifically reserved their attorneys' fees and cost claims under 31 U.S.C. § 3730(d). [Doc. 89 at 3]. The Court entered the

[1] In October 2025, two other cases alleging similar claims were consolidated into this action. [*See* Doc. 102].

dismissal order on June 9, 2025. [Doc. 90].

The Plaintiffs filed their Motion for Attorney Fees on June 23, 2025. Although the Complaint was unsealed when the Court dismissed the action, the Defendants were never formally served in this action and thus were never served with the Motion for Attorney Fees via CM/ECF. Accordingly, the Court ordered the Plaintiffs to serve the Complaint and Motion on the Defendants and for the Defendants to file a response to the Motion. [Doc. 104 at 3]. The Plaintiffs served the Defendants, but filed their supporting documentation under seal and only served the Defendants with redacted versions. The Court found this insufficient to allow the Defendants to respond, since the information submitted by the Plaintiffs completely redacted the descriptions of work performed for each line item. [*See, e.g.*, Doc. 95-2]. The Court also granted the Plaintiffs request for an order directing the Clerk to issue summonses as to four non-parties who were signatories to the settlement agreement. [Op. and Order dated Feb. 13, 2026].

Accordingly, the Court directed the Plaintiffs to serve the Defendants with unredacted versions of its supporting documentation. [*Id.*]. The Plaintiffs did so, and the Defendants, including the four non-parties the Plaintiffs seek fees against, filed a supplemental response.[2] [Doc. 150]. The Plaintiffs also

[2] As such, the Court's use of "Defendants" from here on out will refer to Creative Hospice Care, Inc., Traditions Health, LLC, Mahlega Abdsharafat, Eshag LLC, The Abdsharafat Family Trust LLC, Masoud Pirouz, and Nasrin

filed a reply. [Doc. 152]. Now fully briefed, the Motion is presently before the Court.

## II. Legal Standards

A plaintiff-relator who brings a qui tam action in which both (1) the Government elects to intervene and (2) obtains a settlement from the defendant "shall . . . receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(1). "All such expenses, fees, and costs shall be awarded against the defendant." *Id.* The parties here do not dispute the application of the lodestar method to determine the amount of attorney's fees; instead, the Defendants dispute what amount is an appropriate award and against whom. Under the lodestar analysis, "the [C]ourt must multiply the number of hours reasonably expended on the litigation by the customary fee charged in the community for similar legal services." *Ass'n of Disabled Am. v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006). The lodestar can then be adjusted up or down based on a variety of factors, including the degree of the plaintiff's success in the suit. *Id.*; *see also Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1351-52 (11th Cir. 2008).

---

Hasemi. (*See* Defs.' Joint Supp. Resp. to Mot. for Atty Fees, at 1).

## III. Discussion

In their original Motion, the Plaintiffs requested approximately $1,820,000 in fees and $13,000 in expenses. (Pls.' Mot. for Atty Fees, at 1-2). The Plaintiffs requested supplemental fees for five attorneys in a filing on March 6, 2026 in varying amounts. [*See* Docs. 142-1 to 142-5]. The Defendants take issue with that fact that the time sheets the Plaintiffs provided do not identify which claim each billed task went towards. (Defs.' Resp. in Opp'n to Mot. for Atty Fees, [Doc. 150], at 11-12). They argue that this is fatal to the Plaintiffs' request for fees because the Plaintiffs are only entitled to fees for work on the claims under the "Covered Conduct" section of the parties' Settlement Agreement, and not for work towards any unsuccessful claims. (*Id.* at 12-14). The Defendants thus advocate for an across-the-board percentage reduction in the fees allowed to account for time spent on unsuccessful claims. (*See id.* at 14-28. Additionally, they contend that the office expenses plus travel expenses are not recoverable because there is no explanation of who incurred the expenses or why they were reasonable and necessary. (*Id.* at 19-20, 23-24). Finally, the Defendants assert that the Plaintiffs' request does not support the requested hourly rates, especially with regard to the request to apply a present-day lodestar rate to all hours billed, even those from these cases' inception several years ago. (*Id.* at 28-34).

In their reply, the Plaintiffs argue that the fee and expense reimbursement they are entitled to is not limited to the Covered Conduct in the Settlement Agreement, in large part because the Government dismissed the suit without prejudice as part of the agreement, meaning it was not making a decision about the merits of the Plaintiffs' claims. (Pls.' Reply in Supp. of Mot. for Atty Fees, at 3-4). They assert that the Covered Conduct section was broadly worded to encompass multiple forms of renumeration that Homestead Hospice allegedly gave to medical directors, and therefore to cover all of the counts in the Complaints. (*Id.* at 5-7). On that basis, the Plaintiffs contend, all of their claims are intertwined such that counsels' time was reasonably spent on the litigation as a whole versus on discrete claims, and that time is thus fully compensable.[3] (*Id.* at 7-8). The Plaintiffs additionally argue that their billing and expense records are sufficiently detailed and that the rates requested are reasonable. (*Id.* at 9-12).

**A. Degree of Success**

The Court begins with addressing the Defendants' argument that the Plaintiffs' requested fees should be reduced based on what they allege was a

[3] The Plaintiffs also note that the Defendants' arguments are incongruent with the way qui tam litigation proceeds: "large amounts of the preparation relate to the case generally . . . [this work] must be done whether the relator intends to file one count or ten. Once the case is filed, the Government investigation drives the case. At that point no work is related to any one count unless the Government requests something specifically." (Pls.' Reply in Supp. of Mot. for Atty Fees, at 8).

limited degree of success in obtaining a settlement. Relevant to this analysis is the Covered Conduct section of the Settlement Agreement, which reads:

> The United States and Georgia contend that they have certain civil claims against the Creative Hospice Defendants and Successor under the False Claims Act ("FCA"), 31 U.S.C. 3 §§ 3729-3733, and Georgia False Medicaid Claims Act ("GFMCA"), O.C.G.A. § 49-4-168, et seq., arising from the Creative Hospice Defendants' submission of claims to Medicare and Georgia Medicaid between January 1, 2008 and December 31, 2015 for patients referred by physicians to Creative Hospice that were tainted by the payment of unlawful remuneration by the Creative Hospice Defendants to the physicians in the form of excessive medical director compensation in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).

[Doc. 141, ("Settlement Agreement"), at 2-3]. As part of the Settlement Agreement, the government agreed to release the Defendants from certain specified claims (including claims under the False Claims Act and the Georgia False Medicaid Claims Act), but it also specifically reserved its rights as to liability with regard to other claims. (*See id.* at 4-6). The Court agrees with the Plaintiffs that the claims here were sufficiently intertwined such that a reduction in fees based solely on the fact that the Defendants obtained a release on some of the claims is not warranted. As the Plaintiffs point out, all of their claims in all three Complaints alleged that the Defendants either provided unlawful kickbacks or paid illegal renumeration such that the Georgia and federal Medicare programs were defrauded. Thus, the claims "involve[d] a common core of facts or [were] based on related legal theories." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

Moreover, the Defendants' argument that the majority of the Plaintiffs' claims were "meritless" appears to be based on the fact that the government chose to offer a settlement and release on only some of the claims. (*See, e.g.*, Defs.' Resp. in Opp'n to Mot. for Atty Fees, at 15-16). But the parties here expressly agreed that the Settlement was "neither an admission of liability by the Creative Hospice Defendants or Successor, nor a concession by the United States or Georgia that their claims are not well founded." (Settlement Agreement at 3). And the law is clear that "the fact that a plaintiff prevailed through a settlement rather than through litigation does not weaken her claim to fees." *McBride v. Legacy Components*, LLC, 778 F. App'x 708, 709 (11th Cir. 2019) (citing *Maher v. Gagne*, 448 U.S. 122, 129 (1980)). Instead, the Court is to consider whether the Plaintiffs have obtained "substantial relief." *Hensley*, 461 U.S. at 440 ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."). Here, the Plaintiffs no doubt obtained substantial relief in the form of a Settlement Agreement that obligated the Defendants to pay the government 9.2 million dollars in restitution, in exchange for a less-than-full release of liability. For these reasons, the Court declines to reduce the Plaintiffs' claimed fees based on alleged limited success.

**B. Adequacy of Time Records**

Next, the Court addresses the Defendants' contentions that the Plaintiffs' time records do not clearly identify which claim each task billed went towards. The Defendants summarily state that they "cannot determine what Relators' counsel did for more than 2,000 hours on these cases, what hours were spent on unsuccessful claims, or what hours were spent on redundant tasks, let alone whether the hours were reasonable." (Defs.' Rep. in Opp'n to Mot. for Atty's Fees, at 12, 18-19) (accusing the Plaintiffs of block billing). But the Defendants' arguments with regard to the sufficiency of the Plaintiffs' time records primarily go to their contentions that the Court should discount the fee award for time spent on unsuccessful claims, which the Court has already determined it will not do. The party opposing a fee motion must present specific objections and evidence in support of its position and may not rely on conclusory assertions and arguments. *Norman*, 836 F.2d at 1301 ("As the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents."). The Defendants here raise four distinct challenges to the adequacy of the Plaintiffs' time records: (1) Mr. Bain's and Weisner Law Firm's time entries for certain dates, which the Defendants say fail to identify the claims or issues such work related to; (2) whether Ms. Wallace's time entries were entered contemporaneously or after the fact; (3) Ms. Wallace's and Mr.

Moore's time entries for certain dates, which the Defendants also say failed to identify the claims or issues such work related to and included excessive time spent on certain tasks or redundant tasks; and (4) Froshin, Barger, and Walthall's and Barrasso, Usdin, Kupperman, Freeman & Sarver's time entries for certain dates, which the Defendants say exemplify block billing (Defs' Resp. in Opp'n to Mot. for Atty's Fees, at 18, 21-22, 25-26). The Defendants' challenges arguably lack the reasonable precision that the Eleventh Circuit demands, but the Court is nonetheless obligated to "articulate" its decision with "principled reasons for those decisions."[4] *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1196. The Court will address each of these four specific objections in turn.

In making the lodestar determination, including determining whether the hours claimed were reasonably spent, courts may consider the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time

[4] To that end, the Court notes the Defendants' repeated footnotes stating that where it lists the problematic time entries discussed below, those entries "are a representative sample of the issues observed across the billing statements for Relators' counsel and are not meant to be exhaustive." (*See, e.g.*, Defs.' Resp. in Opp'n to Mot. for Atty's Fees, at 23 n.4). The Court will address only the cited time entries below—if defense counsel did not take the time to identify all of the time entries it found problematic, as the Eleventh Circuit requires, the Court cannot be expected to do so for them.

> limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299-1300 (11th Cir. 1988) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-20 (5th Cir. 1974)); *see also Bivins*, 548 F.3d at 1350-52. "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350. A court may reduce excessive, redundant or otherwise unnecessary hours in the exercise of billing judgment. However, . . . [i]f the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper." *Norman*, 836 F.2d at 1301, 1304 (citation modified). And, if the Court is "faced with a massive fee application . . . an hour-by-hour review is both impractical and a waste of judicial resources." *Loranger*, 10 F.3d at 783. In those circumstances, the court is permitted to impose an across-the-board percentage reduction supported by a "concise but clear explanation of its reasons for the reduction." *Id.*; *see also Bivins*, 548 F.3d at 1351.

### 1. Mr. Bain's and Weisner Law Firm's Time Entries in the *U.S. ex rel. John Doe* case

As an initial matter, "fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of

the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.* (quoting *Norman*, 836 F.2d at 1299). The Defendants' challenges to this subset of Mr. Bain's time records lack merit. The records at issue begin with a phone call and emails to co-counsel about potential claims and the case status, and go on to include such tasks as "researching NDGA procedures for cases filed under seal," "review edits to complaint and Certificate of Interested Persons; finalize same for filing; telephone call with Clerk's office re: NDGA procedures for same; emails with Nelson: same." [Doc. 93-1 at 11]. These sorts of tasks pertain to the case as a whole and do not require an identification of individual claims. Nor does this constitute impermissible block billing. *See, e.g.*, *Spurlock v. Complete Cash Holdings, LLC*, 540 F. Supp. 3d 1201, 1213 (N.D. Ga. 2021) ("Practically speaking, completing one particular task—such as drafting discovery responses—will often require an attorney or paralegal to review documents, converse with clients, and collaborate with other members of the firm to discuss any issues. Listing the multiple aspects of a broader task . . . is not unreasonable nor should it be discouraged."). The same is true here—far from impermissible block billing, Mr. Bain's time entries reflect minute specificity with regard to the subparts of tasks he completed. This is further evidenced by the fact that most of Mr. Bain's entries to this effect are less than two hour increments of time. *See id.* ("Plaintiffs did not list 8-hour chunks of

billing with no detail. . . . the listed entries detail specific and related tasks.”). The remaining pages of the challenged portions of Mr. Bain’s time records largely include small, discrete entries for reviewing consent motions and orders filed in the case, emailing and talking on the phone with co-counsel and opposing counsel about specifically identified procedural issues, and research on specified issues or avenues of relief. [*See, e.g.*, Doc. 93-1 at 12 (“Review Government’s request for extension of time to decide whether to intervene”); 13 (“Wallace telephone call re: additional complaint in MDGA; emails with co-counsel re: same and plan for response”); 14 (“Review motion papers seeking 6-month extension of seal and plan strategy in light of same”); 15 (“Research Supreme Court’s ruling in Cochise and consider impact of same”). In sum, the Court does not find any of these entries to be lacking in specificity or impermissibly block-billed.

The Defendants’ challenges to Weiser Law Firm’s time records “for 2014-2016 (all generic entries)” lacks the reasonable precision necessary for the Court to properly assess it. To the extent the Defendants argue summarily that these entries fail to identify the claims or issues related to the work billed, the Court disagrees. The entries for that time period relate to case initiation and procedural issues, including “investigat[ing] and evaluat[ing] possible claims against Homestead,” “edit[ing] complaint,” “prepare response to government re common interest issue,” and “receive and review government

motion re seal." [Doc. 93-2 at 12]. These task descriptions are sufficient to allow the Court to assess what the time claimed was spent doing. *See Oxford Asset Mgmt., Ltd.*, 297 F.3d at 1196. Accordingly, the Court will not discount the challenged Weisner Law Firm time entries, either.

**2. Validity of Ms. Wallace's Time Entries**

The Defendants challenge some of Ms. Wallace's time entries on the grounds that several of the entries note "date approximate", suggesting the records were not updated in real time. The Plaintiffs explained that these entries, which account for five entries out of more than 2200, were recorded on a notepad while Ms. Wallace was away from her computer. The Court accepts this explanation, especially given that the Defendants have not challenged the number of hours Ms. Wallace spent on the listed tasks or the reasonableness of the tasks themselves. While attorneys are expected to keep contemporaneous time records, there is no prohibition against keeping those records on a notepad and entering into a computer system later. And in any event, a lack of contemporaneous records does not justify an automatic reduction in hours claimed. *Johnson v. Univ. Coll. of Ala. in Birmingham*, 706 F.2d 1205, 1207 (11th Cir. 1983).

**3. Ms. Wallace's and Mr. Moore's Time Entries in *U.S. ex. rel. Cole***

The subset of Ms. Wallace's time entries that the Defendants challenge are likewise reasonable. The time entries from the Defendants identify contain

sufficient descriptions with regard to the issues worked on and do not exemplify impermissible block billing. For example, Ms. Wallace's entries include "research issues related to when 'free' items can be provided, what can be provided, and what the limitations are in the general context;" "email to Clete re photographic evidence about use of Homestead CNAs at the assisted living facilities;" and "research prior cases involving violation of anti-kickback statute and cases referenced in Law360 article." [Doc. 93-3 at 17-18]. While some of Ms. Wallace's later entries state only that she spent time in conferences with co-counsel "about case", preparing for those conferences, and doing email follow-ups, this is still enough to show the Court "the general subject matter of the time expenditures" to the degree necessary for it to assess whether the time claimed was reasonable. *See Oxford Asset Mgmt., Ltd.*, 297 F.3d at 1196. Although Defendants claim generally that Ms. Wallace spent "excessive amounts of time . . . on each task," it does not point to any specific examples, so the Court cannot fairly address this objection. *See ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) ("In order for courts to carry out their duties in this area, objections and proof from free opponents concerning hours that should be excluded must be specific and reasonable precise." (citation modified)).

The Defendants' challenge to Mr. Moore's time entries fares no better. In the first entry at issue, Mr. Moore billed 6.5 hours to "review and revise

complaint and documents, compare SDGA/MDGA for claims, not violation, first to file." [Doc. 93-4 at 6]. This too provides enough information for the Court to glean that Mr. Moore edited the complaint before filing, compared it against the pending cases in the Southern and Middle Districts of Georgia, and determined whether his action was the first to be filed. The Court does not find 6.5 hours to be unreasonable for these tasks, either, considering the breadth of the complaint and the fact that the claims at issue required Rule 9(b) pleading. Likewise, two hours spent with Ms. Wallace on August 30, 2017, for "presentation; conf. with team re: strategy; review[ing] case file" is reasonable given the size and breadth of the claims in this action. [*Id.*]. The remaining challenged entries involve time periods of two hours or less, and some as small as .2 hours, that Mr. Moore spent reviewing and responding to emails with the government and Ms. Wallace, communicating and strategizing with his team, and reviewing the case file. Again, given the size and breadth of the claims involved in this case and the size of the ultimate settlement obtained on just some of the claims, the Court does not find this relatively trivial amount of time spent unreasonably. *See Norman*, 836 F.2d at 1299-1300 (recounting the factors to consider in making the lodestar determination). For these reasons, the Court also declines to discount Ms. Wallace's and Mr. Moore's time entries.

### 4. Froshin, Barger, and Walthall's and Barrasso, Usdin, Kupperman, Freeman & Sarver's Time Entries in *U.S. ex. rel. Luchtman*

The Court likewise declines to reduce Froshin, Barger, and Walthall's time entries. The entry that comes closest to block billing is from August 31, 2020, where Mr. Bucy billed 9.5 hours for time spent "review[ing] additional documents provided by relators; draft[ing] and edit[ing] the Complaint; email[ing] Jim Barger and Elliot Walthall re: venue and strategy; multiple emails with Relators." [Doc. 93-5 at 36]. But, as Judge Totenberg noted in *Spurlock*, "listing the multiple aspects of a broader task"—such as drafting the complaint, in this case—"is not unreasonable nor should it be discouraged." *Spurlock*, 540 F. Supp. 3d at 1213. The same is true of entries on September 28, 2020; for example, Mr. Barger billed 3 hours for "research re appropriate venue; multiple phone calls with attorneys in various venue options re quality of investigations in USAO offices and judicial temperament in various venues." [Doc. 93-5 at 32]. Other entries include time spent sending multiple emails but give enough detail about the purpose of the email for the Court to determine the time spent was reasonable. [*See id.* at 26]. And 5 to 7 hours spent conducting extensive review, outlining, and indexing of patient records in a case of this size does not seem unreasonable. [*See id.* at 27].

The Defendants raise a blanket challenge to Barrasso, Usdin, Kupperman, Freeman & Sarver's time entries from December 5, 2022 to March 6, 2024. The largest of these entries is 1.7 hours, and all represent either emails

sent on specified issues related to the case or preparing and attending conferences with the government regarding settlement. [Doc. 93-6 at 7]. The Court does not find this time unreasonable, either. Accordingly, the Court will not discount any of the challenged time entries from these two firms.

**C. Reasonableness of the Billed Rates**

The Defendants raise three main challenges to the reasonableness of the hourly rates billed; they argue that the Plaintiffs' counsel should not collect current day rates for work performed several years ago, that the rates are excessive for the geographic area counsel is located, and that the rates are generally unsupported by the record. The Court takes each challenge in turn.

**1. Historical vs. Current Rates**

In their original Motion, the Plaintiffs asked the Court to base its lodestar calculation on counsel's current rates, even for time billed from the start of this action, in order to "adequately compensate for the delay in receiving payment." (Pls.' Mot. for Atty's Fees, at 4). The Defendants argue that under *Johnson*, a delay in payment should be accounted for by considering inflation and interest rather than compensating at current rates. But in *Johnson*, the Eleventh Circuit also noted that delay could be accounted for by awarding current rates rather than historical rates, although the court also clarified that it "[did] not prescribe any set method for correcting for delay in payment, but some form of correction must be undertaken." *Johnson*, 706 F.2d

at 1210-11. And in *Norman*, the Eleventh Circuit said that in cases of delay, the court should "generally award compensation at current rates rather than at historic rates." *Norman*, 846 F.2d at 1302. Most recently, in *Otto v. City of Boca Raton, Florida*, the Eleventh Circuit noted that its practice has changed in light of *Perdue v. Kenny A, ex rel. Winn*, 559 U.S. 542 (2010), which held that "enhancements to compensate for delay in payment should be reserved for 'extraordinary circumstances in which an attorney's performance involves exceptional delay in the payment of fees.'" *Otto*, 2025 WL 2952783, at * 7 (11th Cir. 2025) (citing *Perdue*, 559 U.S. at 556).

More specifically, the Supreme Court held that "there may be extraordinary circumstances in which an attorney's performance involves exceptional delay in the payment of fees. . . . Compensation for this delay is generally made either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." *Perdue*, 559 U.S. at 556. The Eleventh Circuit's reliance on *Perdue* in *Otto* seems to have been in reference to adding enhancements on top of the lodestar figure owed to delay versus adjusting the rate used in the lodestar calculation to account for the delay. *See id.* at 556-57 (chastising the district court for not explaining how a 75% enhancement to the lodestar figure reflected an appropriate rate for the relevant market); *see, e.g.*, *In re Delta/Airtran Baggage Fee Antitrust Litig.*, 2015 WL 4635729, at *18-19 (N.D. Ga. Aug. 3, 2015) ("In the Eleventh Circuit,

at least since *Norman,* the former practice of awarding fees measured by current billing rates is the 'universal' approach to compensating for delay in payment. The latter practice of enhancing fee awards is reserved for cases that are 'unusual,' 'rare,' and 'exceptional.'" (citation modified)).

Applying this law, the Court finds this case to be one where the delay in payment justifies awarding the Plaintiffs' counsel fees at current rates rather than historical rates. There is no debate that there has been a significant delay in payment in this case. This action was initially filed in 2015 and, after several years of the government requesting extensions of time to decide whether it wanted to intervene, it did so and immediately settled the case over ten years after it was initially filed. The great weight of the case law counsels in favor of awarding counsel fees at current rates as opposed to adjusting for inflation or some other enhancement method. Although the delay here deserves compensation, this case is not "unusual, rare, or exceptional" such that another enhancement is warranted, nor do the Plaintiffs argue that it is. *See, e.g.*, *In re Delta*, 2015 WL 4635729, at *18-19 (finding an award of current rates warranted for a delay of almost three years). Moreover, even accepting the Defendants' argument that a different measure should be used to account for inflation and interest, they do not explain what reduction measure should be used or provide a figure for the Court's consideration. *See* ACLU of Ga., 168 F.3d at 428 (noting that the non-movant has the burden to offer specific

objections and proof to support them when opposing a motion for attorney's fees). Accordingly, the Court will deny the Defendants' request and award fees at current rates to account for the years-long delay in payment in this case. *Perdue*, 559 U.S. at 556; *Norman*, 846 F.2d at 1302.

**2. Availability of Local Counsel**

Next, the Defendants object to the non-local rates sought by some of the Plaintiffs' counsel, arguing that they "provide no evidence of a lack of local attorneys willing and able to handle qui tam claims in the applicable areas." (Defs.' Resp. in Opp'n to Mot. for Atty's Fees, at 30, 33-34). The Plaintiffs did not respond to this argument. As the Eleventh Circuit explained in *ACLU of Ga.*, "[t]he general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is "the place where the case is filed. If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *ACLU of Ga.*, 168 F.3d at 437 (citation modified

The non-local counsel in this matter that the Defendants appear to reference are the Weiser Law Firm, the only counsel admitted pro hac vice. The Court also notes that J. Elliot Walthall, of Froshin, Barger, & Walthall, also submitted materials in support of a fee award in conjunction with the Plaintiffs' Motion. [*See* Doc. 93-6]. Mr. Walthall never filed a notice of

appearance in this matter nor an application for admission pro hac vice, and he did not state in his affidavit that he is a member of the State Bar of Georgia. Nonetheless, Local Rule 83.1(B)(1) permits an attorney within a law firm providing legal services for a client to seek fees for his work without appearing pro hac vice so long as other attorneys within the firm have appeared, have been admitted pro hac vice or are regular members of the bar of this Court, and are directing the work. L.R. N.D.Ga. 83.1(B)(1). That appears to be the case here, with Attorney Ben Bucy having filed a notice of appearance and being a member of this Court's bar. Although Mr. Walthall appears to primarily practice in Alabama, the $1,165/hour rate he seeks is in between than the $1,200/hour rate sought by his partner Mr. Barger and the $700/hour sought by Mr. Bucy, both of whom are local counsel in this District. The Court will discuss the reasonableness of these rates below, but for these reasons, it will not discount Mr. Walthall's rate based solely on his non-local status.

As to the Weiser Law Firm, the Court must agree with the Defendants that the evidence provided does not support the unavailability of non-local counsel as required to secure non-local rates. *See ACLU of Ga.*, 168 F.3d at 437. The affidavit provided in support of Attorneys' Robert Weiser, James Ficaro, Christopher Nelson, and Ross Wolfe makes no mention of this issue. [*See* Doc. 93-2]. And the supplemental affidavit in support is offered from an attorney who is not familiar with any of the possible local markets for this

consolidated action. [*See id.* at 8-9]. The remedy in such a circumstance is to instead award fees at the local market rate. *See ACLU of Ga.*, 168 F.3d at 438. These attorneys request fees at the following hourly rates: Mr. Weiser seeks $1,450/hour; Mr. Ficaro seeks $1,000/hour; Mr. Nelson seeks $1,000/hour, and Mr. Wolfe seeks $500/hour. [Doc. 93-2 at 2-3]. Thus, the Court will consider whether these attorneys' billed rates are reasonable within the market local to this action below and will apply any applicable reduction accordingly.

**3. Appropriate Hourly Rates for the Relevant Market**

Having determined which hours are to be included in the lodestar calculation, the Court next turns to determining the appropriate hourly rates and the relevant market. First, the Defendants argue that the relevant market for hourly rate determination is the market where the case was filed and, in this consolidated action, the three underling cases were filed in three separate districts. (Defs.' Resp. in Opp'n to Mot. for Atty's Fees, at 30). They contend that the Plaintiffs have failed to show evidence showing a lack of attorneys in the area where each case was filed who could have handled each individual case, which warrants an across-the-board reduction in fees. (*Id.* at 33-34).

As the Defendants point out, the relevant market issue in this case is complicated by the fact that the present action is a consolidation of what was originally three separate cases, two of which were filed in the Middle District of Georgia and the District of South Carolina. So, although the general rule is

that the relevant market is the place where the case was filed, that rule does not readily resolve the issue in this case. *See ACLU of Ga.*, 168 F.3d at 437. The Court's research did not reveal a factually analogous case where similar cases filed in different venues were transferred and consolidated for resolution and a claim for attorney's fees was then made. However, some general principles motions for attorney's fees help guide the Court's decision. As the Court has previously discussed, in *Hensley*, in the context of discussing apportionment of fees between successful and unsuccessful claims, the Supreme Court stated that sometimes the plaintiff's claims will involve a "common core of facts or will be based on related legal theories" such that counsel's time should be considered to be devoted to the litigation as a whole. *Hensley*, 461 U.S. at 434-35. The Supreme Court noted that in such cases, it is difficult to divide the hours expended on a claim-by-claim basis and that the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. The present action is one such case with regard to the intertwined nature of the three consolidated cases, especially because this action was resolved through a settlement. Looking at the dockets for the individual cases, it appears very little action was taken in each individual case prior to the settlement. Although the Court is aware that these types of cases are often primarily litigated behind the scenes rather than publicly on the docket, there

is very little in the record for the Court to determine which portions of the time, if any, billed by the attorneys who filed the *Doe* and *Cole* cases should be billed at a market rate for the venues where those cases were originally filed. Instead, the Court will focus on the overall significance of the relief obtained and the resulting settlement, which occurred after the *Doe* and *Cole* cases were consolidated into this main action, and the main action was filed here in the Atlanta division of the Northern District of Georgia. Accordingly, the Court will use the Atlanta area as the relevant market for the lodestar determination. *ACLU of Ga.*, 168 F.3d at 437.

On to the hourly rates. While the Defendants state repeatedly that the hourly rates Plaintiffs' counsel seeks to recover are "exorbitant, windfall rates" that are not supported by the Plaintiffs' evidence, they do not suggest what rates should be used. (*See* Defs.' Resp. in Opp'n to Mot. for Atty's Fees, at 27-33). Instead, they state only that the Court should reduce the hourly rates claimed by each of the Plaintiffs' counsel "to [a] reasonable rate for the time period and jurisdiction." (*Id.* at 35). The Plaintiffs did not truly respond to this argument in their reply, but in the Motion itself, they point to two Atlanta division class action cases from the last six years in support of their requested fees.[5]

---

[5] The cases *are In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *39 (N.D. Ga. Mar. 17, 2020) and *In re The Southern Company S'holder Derivative Litig.*, 2022 WL 4545614, at *6, *11 (N.D. Ga.

Under Eleventh Circuit precedent, a reasonable hourly rate under the lodestar analysis "is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000) (citation modified). The Court itself is an "expert on the question [of reasonable hourly rates] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). What an attorney charges his paying clients "is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as determined by supply and demand." *Dillard*, 213 F.3d at 1354-55 (citation modified). "The party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates . . . . By satisfactory evidence, we mean more than the affidavit of the attorney performing the work." *Loranger*, 10 F.3d at 781 (citation modified).

June 9, 2022).

**a. Requested Hourly Rates**[6]

| Name | Title | Years of Experience | Hourly Rate |
|---|---|---|---|
| David Bain | Owner/ Sole Attorney | 29 | $875 |
| John Gross | Of Counsel | 23 | $900 |
| Robert Weiser | Founder/Managing Partner | 29 | $1,450 |
| James Ficaro | Partner | 16 | $1,000 |
| Christopher Nelson | Partner | 26 | $1,000 |
| Ross Wolfe | Associate | 13 | $500 |
| Lee Tarte Wallace | Owner/ Sole Attorney | 38 | $1,100 |
| Paralegal, The Wallace Firm | Paralegal | — | $375 |
| Law Clerk, The Wallace Firm | Law Clerk | — | $175 |
| Michael Moore | Founder/Partner | 33 | $1,025 |
| J. Elliot Walthall | Partner | 19 | $1,165 |
| James Barger | Partner | Unknown | $1,210 |
| Benjamin Bucy (FBW)[7] | Partner | 10 | $700 |
| Benjamin Bucy (BUKFS) | Unknown | 10 | $700 |

[6] The Plaintiffs did not compile a spreadsheet for the Court with this information or the total hours billed per biller, so the Court has done its best to compile complete and accurate information from their filings.

[7] Mr. Bucy began this litigation as a partner at Froshin, Barger, and Walthall, but during the litigation he joined Barrasso, Usdin, Kupperman, Freeman & Sarver. His time is billed separately for each firm.

Of these professionals, all submitted affidavits in support, although only some submitted affidavits of other practicing attorneys in support of their requested fees. In terms of statements of what they charge their paying customers, only Mr. Bucy and Mr. Gross (whose affidavit supports Mr. Weiser, Mr. Ficaro, Mr. Nelson, and Mr. Wolfe's requested fees) state that the rates sought have been paid for their work by other defendants in similar cases. See *Dillard*, 213 F.3d at 1354-55. Several of the Plaintiffs' attorneys rely on *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020). The Court finds *In re Equifax* inapplicable here. That case involved a common fund settlement and was a multi-district action. On that basis, the Court applied a percentage-based award method rather than the lodestar method applicable here. *Id.* at *1278. *In re Equifax* was also not a qui tam case, so the rates charged by counsel there are not necessarily the best evidence for the market rates for such cases in the Atlanta division today. *Dillard*, 213 F.3d at 1354 (noting that the market rate is the rate "in the relevant legal community for similar services"). Nonetheless, the Court's research did not reveal any recent, similar cases in the Atlanta division to determine a reasonable hourly rate for similar work.

The Court is considered an expert on the hourly rate issue, however, and so will rely on its own knowledge of the Atlanta legal market. *Loranger*, 10 F.3d at 781. Right out of the gate, the Court notices a wide discrepancy between

the rates charged among the Plaintiffs' attorneys, even with similar titles and years of experience; for example, Mr. Weiser seeks $1,450 per hour as a partner with 29 years of experience, while Ms. Wallace has nearly a decade more experience and seeks $1,100. Mr. Nelson, also a partner, has roughly the same years of experience as Mr. Weiser and seeks $1,000 per hour, while Mr. Bain, a sole proprietor with the same 29 years of experience, seeks only $875. The Court does not find the higher of these fees justified, particularly in light of the dearth of evidence supporting the higher fee requests. *See, e.g.*, *Loranger*, 10 F.3d at 781 ("The party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates . . . . By satisfactory evidence, we mean more than the affidavit of the attorney performing the work." (citation modified)).

Beyond self-supporting affidavits, Mr. Walthall, Mr. Barger, and Mr. Bucy provided the affidavit from Atlanta-based attorney Michael Sullivan, who stated his belief that these attorneys are "among the top tier of [False Claims Act] practitioners in the entire United States." [Doc. 93-7 ¶ 12]. Mr. Sullivan states that "it is common for experienced [False Claims Act] practitioners to charge more than $1,000 per hour and collect those rates," and that his hourly rate is $1,350 per hour with over 35 years of experience. [*Id.* ¶¶ 3, 17]. Larry Golston, a partner barred in Alabama with 28 years of experience, avers in support of these same attorneys that False Claims Act practitioners charge

more than $1,000 per hour and that he charges $950 per hour. [Doc. 93-8 ¶¶ 2, 24]. Mr. Moore submitted an affidavit from Robert Magnanini, a partner barred in New Jersey with 33 years of experience, who summarily states that Mr. Moore's $1,025 per hour fee is reasonable. [Doc. 93-9 ¶¶ 2, 4, 8]. Mr. Magnanini also submitted a near identical affidavit in support of Ms. Wallace. [Doc. 93-10].

The Court will cap fee awards at $1,100 per hour, the rate at which Ms. Wallace seeks fees. Ms. Wallace's practice is based in the Atlanta area, and she has the most years of experience of any of the Plaintiffs' counsel. The three attorneys seeking fees higher than Ms. Wallace's rate are Mr. Weiser, Mr. Walthall, and Mr. Barger. Mr. Weiser is not local to the Atlanta area and does not state that he is a member of the State Bar of Georgia; given the lack of evidence he presents with regard to the market rates in the Atlanta area specifically for False Claims Act work, the Court presumes that the rate he seeks must be a rate local to his Pennsylvania practice. But the Plaintiffs have not shown a lack of attorneys willing and able to handle False Claims Act claims practicing in the Atlanta area—and in fact have a few Atlanta-based attorneys—so Mr. Weiser is not entitled to fees at a non-local rate. *ACLU of Ga.*, 168 F.3d at 437. The Court is unable to conclude that Mr. Barger's request for $1,210 is reasonable given that he did not state how many years of experience he has or where he is barred. The Court will thus reduce Mr.

Weiser's and Mr. Barger's rates to $1,100 per hour.

The Court finds Mr. Walthall's request for $1,165 per hour to be unreasonable for the Atlanta market given that he has half the years of experience of Ms. Wallace, and significantly less than Mr. Bain, Mr. Gross, and Mr. Nelson, all of whom seek a lower rate. The Court will reduce his rate to $900 per hour, which is more in line with the rates requested by Mr. Gross and Mr. Bain. Similarly, the Court also finds Mr. Ficaro's $1,000 per hour rate to be unreasonable in light of his years of experience when compared to the significantly lower rate requested by Mr. Wolfe, with similar experience, and the fact that several of the attorneys seek fees at or below that rate with seven to sixteen more years of experience than Mr. Ficaro. The Plaintiffs also do not present evidence supporting a non-local rate for Mr. Ficaro, as with Mr. Weiser. The Court will reduce Mr. Ficaro's rate to $850 per hour, which is more in line with the rates requested by Mr. Gross and Mr. Bucy. Finally, the Defendants does not take issue with the rates charged by Ms. Wallace's paralegal and law clerk, and the Court finds those rates reasonable in light of its knowledge of the Atlanta market. The Court applies these reduced fees to conduct the lodestar calculation in the table below.

**b. Lodestar Calculation**

In the chart below, the Court provides the hourly rate it has determined is appropriate for each attorney and support person requesting fees, multiplied

by the number of hours billed, to arrive at a total lodestar figure per person.

| Name | Hours Requested | Hourly Rate | Total |
|---|---|---|---|
| David Bain | 181 | $875 | $158,375 |
| John Gross | 38.7 | $900 | $34,830 |
| Robert Weiser | 11 | $1,100 | $12,100 |
| James Ficaro | 88 | $850 | $74,800 |
| Christopher Nelson | 126.3 | $1,000 | $126,300 |
| Ross Wolfe | 211.9 | $500 | $105,950 |
| Lee Tarte Wallace | 673.4 | $1,100 | $740,740 |
| Paralegal, The Wallace Firm | 46.4 | $375 | $17,400 |
| Law Clerk, The Wallace Firm | 5 | $175 | $875 |
| Michael Moore | 162.8 | $1,025 | $166,870 |
| J. Elliot Walthall | 16.05 | $900 | $14,445 |
| James Barger | 103.65 | $1,100 | $114,015 |
| Benjamin Bucy (FBW) | 183.35 | $700 | $128,345 |
| Benjamin Bucy (BUKFS) | 39.90 | $700 | $27,930 |
| | | **Total Fee Award:**[8] | **$1,722,975** |

[8] This total does not include the Plaintiffs' request for supplemental fees, which the Court addresses below.

### D. Expenses and Travel Costs

Plaintiffs' counsel also seeks to recover a total of approximately $13,000 in expense and travel costs, which the Defendants oppose on various grounds. (Pls.' Mot. for Atty's Fees, at 10-11). Plaintiffs are entitled to reasonable expenses and costs under 31 U.S.C. § 3730(d)(1). In general, the Eleventh Circuit has held that "reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement" may be recoverable expenses. *Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1192 (11th Cir. 1192). However, "routine office overhead normally absorbed by the practicing attorney" is not recoverable. *Id.* The dividing line seems to be expenses that are not readily attributable to any particular case, such as "rent, heat, and the like." *In re Hillsborough Holdings Corp.*, 127 F.3d 1298, 1402 (11th Cir. 1997). Costs for conducting legal research are generally not recoverable, nor are copying, postage, and courthouse parking fees. *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996). The Court will address the expense and travel cost requests presented in each of the affidavits filed by Plaintiffs' counsel.[9] [Docs. 93-1 to 93-6].

First, Mr. Bain seeks $566.26 in expenses. [Doc. 93-1 at 26]. Of these expenses, $66.26 are parking and Uber fees, which are not recoverable. *See*

---

[9] Mr. Moore did not request any expenses. [Doc. 93-4 ¶ 14]. Mr. Bucy did not request expenses for his work while at Barrasso, Usdin, Kupperman, Freeman & Sarver. [Doc. 93-6].

*Duckworth*, 97 F.3d at 1399. The Court finds the remaining fees for a pro hac vice application and the case filing fee to be reasonable, so it will allow $500 in expenses as to Mr. Bain. Second, Mr. Gross's firm requests $7,829.62 in expenses, of which a large portion is "Thompson West", presumably legal research expenses for Westlaw. These expenses, along with an expense titled "postage," are not recoverable. *See id.* There are also two small expenses labeled "Staples" and "AJC News." [Doc. 93-2 at 19]. Since the Court cannot determine what those expenses are, it cannot determine if they are reasonable, so they will be excluded. The Court finds Mr. Gross's remaining requested expenses reasonable, and will allow a total of $5,690.03 in expenses. Third, Ms. Wallace seeks $2,464.44 in expenses, including parking, Uber, and Lyft fees and $1,200 in "phone, copier, office expenses." [Doc. 93-3 at 121]. None of these are recoverable. *See Duckworth*, 97 F.3d at 1399. The remaining expenses are for airfare and meals for travel to Washington D.C. for a conference with co-counsel. While necessary travel can be recoverable, Ms. Wallace has made no attempt to explain why this travel was necessary or what the conference was for. Thus, the Court declines to award these travel expenses. The remaining requested expense are reasonable, so the Court will award $516.10 in expenses to Ms. Wallace. Finally, Mr. Walthall seeks $1,081.75 in expenses on behalf of himself and members of his firm. [Doc. 93-5 ¶ 12]. Among these fees is $600.96 for "bulk scan contractor," with no explanation of what this expense is. [*Id.* at

43]. To the extent it was related to discovery processing, the Court finds this to be unrecoverable office overhead. But since the Court cannot determine whether this expense is reasonable, the Court declines to award his amount. The remaining requested expenses are reasonable, so the Court will award Mr. Walthall and his firm $480.79. In sum, the Court awards Plaintiffs' counsel $7,186.92 in expenses.

**E. Request for Supplemental Fees**

Lastly, the Plaintiffs request supplemental fees that have been incurred since the submission of their original Motion for Attorney's Fees. [Doc. 142]. The Defendants did not oppose this request for fees. "[F]ees incurred in seeking attorney fees (known as 'fees-on-fees') are compensable in this Circuit. *See, e.g.*, *Johnson v. Velocity Invs., LLC*, 2018 WL 3061926, at *5 (N.D. Ga. Mar. 12, 2018) (citing *Wolff v. Royal Am. Mgmt., Inc.*, 545 Fed. App'x 791, 796 (11th Cir. 2013)). The Court has reviewed these time entries and finds them to be reasonable, so it will award supplemental fees at the same hourly rates previously determined.

| **Name** | **Hours Requested** | **Hourly Rate** | **Total** |
|---|---|---|---|
| David Bain | 102.25 | $875 | $89,468.75 |
| John Gross | 49.6 | $900 | $44,870 |
| Robert Weiser | None | — | $ |
| James Ficaro | None | — | $ |

| | | | |
|---|---|---|---|
| Christopher Nelson | None | — | $ |
| Ross Wolfe | None | — | $ |
| Lee Tarte Wallace | 50.5 | $1,100 | $55,550 |
| Paralegal, The Wallace Firm | None | — | — |
| Law Clerk, The Wallace Firm | None | — | — |
| Michael Moore | 13.95 | $1,025 | $14,298.75 |
| J. Elliot Walthall | None | — | — |
| James Barger | None | — | — |
| Benjamin Bucy (FBW) | None | — | — |
| Benjamin Bucy (BUKFS) | 6.3 | $700 | $4,410 |
| | | **Total Supplemental Fee Award:** | **$208,597.50** |

Mr. Bain was the only attorney to also request supplemental expenses; he seeks an additional $1,833.23. [Doc. 142-1 at 13]. The Court has reviewed these requested expenses and find them to be reasonable, so the Court will award Mr. Bain $1,833.23 in supplemental expenses.

## IV. Conclusion

For the foregoing reasons, the Plaintiff-Relators' Motion for Statutory Award of Fees and Expenses [Doc. 91] is GRANTED. The Court hereby awards the Plaintiff-Relators attorney's fees in the total amount of $1,931,572.50 and $9,020.15 in total expenses, jointly and severally against the Defendants and

non-parties Traditions Health, LLC, Eshag LLC, the Abdsharafat Family Trust LLC, Masoud Pirouz, and Nasrin Hashemi.

SO ORDERED, this ___18th___ day of September, 2026.

THOMAS W. THRASH, JR.
United States District Judge